Charles W. **DEMPSEY**, Appellant,

v.

**NEWPORT BOARD OF ADJUSTMENTS and City of Newport, Kentucky,**
Appellees.

No. 95–CA–1250–MR.

Court of Appeals of Kentucky.

March 28, 1997.

Elaine Costello, Highland Heights, for Appellant.

Michael L. Schulkens, Newport, for Appellees.

Before BUCKINGHAM, COMBS and KNOPF, JJ.

COMBS, Judge.

Charles W. Dempsey brings this appeal from an April 19, 1995, order of the Campbell Circuit Court affirming a decision of the Newport Board of Adjustment. We reverse and remand the judgment with directions.

This appeal involves the termination of a nonconforming use existing under the City of Newport's zoning ordinance. Nonconforming use is authorized by KRS 100.253, an enabling act, which provides, in part, as follows:

(1) The lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it may be continued, although such use does not conform to the provisions of such regulations, except as otherwise provided herein.

With respect to its regulation of nonconforming uses, Newport's zoning ordinance, § 9.11, provides, in part, as follows:

B. NONCONFORMING USES:

\*   \*   \*   \*   \*   \*

3. TERMINATION: Any one of the following acts or conditions shall terminate, immediately, the right to operate a public or private nonconforming use:

a. Abandonment. Abandonment shall be deemed to have occurred when the nonconforming activity ceases to operate and/or the premises are vacated so as to leave the property unoccupied for a period of at least six (6) consecutive calendar months.

\*   \*   \*   \*   \*   \*

d. Whenever said nonconforming use becomes illegal, a nuisance, or a hazard to the public's safety, health, and welfare.

Also relevant are portions of the city's code of ordinances which provide as follows:

Sec. 26–26. Annual occupational license tax.

(a) Payment required. There is hereby levied and established an annual occupational license tax, in the respective sums or amounts hereinafter specified upon all persons doing or conducting any business in this city, which business may be herein or hereafter subject to said tax; and no person shall conduct any such business within the corporate limits of the city without first having paid the established tax and having obtained the prescribed license therefor.

Sec. 26–27. Purpose for which license tax imposed.

The license tax or fees levied and established as aforesaid shall be used, together with other funds, to defray the cost and general expense of maintaining the city government and shall be placed in the general fund of the city for the purpose aforesaid.

Sec. 26–28. Applications and returns to be filed.

(a) . . . Upon notice from the finance director or his representative that a business is being operated in violation of this division, such business shall be immediately stopped. This notice to stop business operations shall be in writing and shall be given to the owner of the business or an agent and shall state the conditions under which the business may be resumed. . . .

On April 22, 1994, Dempsey acquired the property formerly known as Riggs Auto Repair pursuant to a foreclosure sale against

the prior owner, Glenn Riggs. Dempsey promptly applied for an occupational license to continue use of the site as an automotive parts repair center and garage.

By letter of May 25, 1994, the zoning administrator denied Dempsey's application for an occupational license. In vague terms, the zoning administrator explained that since the property had not had a valid occupational license since June 1993, the nonconforming use status of the premises had been abandoned.

In order to contest the administrator's refusal of the license, Dempsey requested a hearing before the Board of Adjustment. KRS 100.261. The hearing was tape-recorded and minutes were prepared. The board's minutes reflect that Riggs Auto Repair had been in operation at least as late as January 1994, and that Riggs had subsequently offered the property for sale. The zoning administrator indicated to the board that the premises had been considered a nonconforming use, but since no occupational license had been obtained since June 1992, any business conducted on the premises after that date would have been unlawful.[1] The City Solicitor agreed with the zoning administrator, opining that Riggs Auto Repair had not been lawfully operated since June 1992. Based upon that conclusion, the solicitor indicated that the nonconforming use had been lost—if not by July 1, 1992, then certainly six months after July 1, 1992. Glenn Riggs testified that there were never court orders or notices directing him to cease business at the location.

Following the hearing, Dempsey received notice from the zoning administrator that the decision to deny the occupational license had been upheld by the board, "based on the fact that the non-conforming use was lost by unlawful use of the property." Dempsey appealed the Board's decision to the Campbell Circuit. KRS 100.347(1). On April 19, 1995, the circuit court affirmed the board's decision. This appeal followed.

While a nonconforming use may be deemed to be undesirable by a portion of the community, it nonetheless constitutes a legitimate, vested property right and clearly enjoys broad constitutional protection. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *See Darlington v. Board of Councilmen*, 282 Ky. 778, 140 S.W.2d 392 (1940). Vested property rights are not easily lost or voided.

As the board reiterates in its brief, this is *not* a case involving the voluntary or volitional *abandonment* of a nonconforming use. Instead, this case involves a unilateral administrative termination of a nonconforming use pursuant to the city's zoning ordinance. The board contends that Riggs's failure to secure an occupational license for his business rendered its operation illegal—thus creating a basis for termination of the nonconforming use pursuant to the zoning ordinance. Therefore, the argument continues, at the time Dempsey purchased the property, its nonconforming status had already been lost and could not be revived.

As the Appellant has noted, courts have repeatedly considered and concluded that business licensing, business and occupational tax regulations, or building permits are matters separate and apart from land use planning and are not *per se* determinative of the continuance of a nonconforming use. *See Van Sant v. City of Everett*, 69 Wash.App. 641, 849 P.2d 1276 (1993), and the cases collected therein. Kentucky courts adopted this position at least as early as 1971. *See Gates v. Jarvis, Cornette & Payton*, Ky., 465 S.W.2d 278 (1971).

More recently, in *City of Middlesboro Planning Comm'n v. Howard*, Ky., 551 S.W.2d 556 (1977), the Kentucky Supreme Court considered a city ordinance which provided for the termination of nonconforming uses based upon failure to obtain a privilege license for a period of twelve months. The

1. The zoning administrator apparently changed his position with respect to the date upon which Riggs Auto Repair began to operate unlawfully after reviewing a report of the license inspector. The inspector's records indicate that while Riggs submitted an occupational license fee for the period from July 1992 to June 1993, he failed to submit the required renewal form. Thus, the business had not technically complied with the licensing requirements for this period. Riggs admitted that he did not pay a license fee for the period of July 1993 to June 1994.

court recognized that the issuance of business licenses was a revenue measure for the city. The ordinary penalty for failing to secure such a license was 10% of the delinquent fee and a fine—not an economically devastating sum. But the penalty sought to be imposed upon the Howards, the owners of a trucking business within a residential neighborhood, was the total loss or deprivation of their vested property right in the nonconforming use—or what amounted to capital punishment in economic terms. The court concluded that "violation of a revenue producing ordinance is not sufficient in itself to forfeit a nonconforming use." *Id.* at 557. It observed further that the

> termination provision of the zoning ordinance as to the privilege license does not bear a reasonable relationship to the purpose of terminating nonconforming use when it is no longer necessary to safeguard the property right of the owner (citation omitted).

*Id.* The Newport Board of Adjustment has ably drawn distinctions between the facts with which we are confronted in this case and those at issue in *City of Middlesboro.* Nevertheless, we find the reasoning and holding of that case to be particularly instructive and relevant.

A significant factor to be considered in the resolution of this case is the fact that the city's finance director or license inspector failed to provide to Riggs—pursuant to Sec. 26–28 of the city's ordinances—written notice to stop business on the premises. There is nothing to indicate that Riggs was ever so instructed or that business operations ever ceased at the property prior to Dempsey's acquisition of it. This omission seriously erodes the credibility and good faith of the board's position.

Finally, mindful of the language of *City of Middlesboro,* we cannot agree that Riggs's failure to secure an occupational license can form the basis for termination of the nonconforming use—despite the provisions of the city's zoning ordinance. As the *Middlesboro* court expressed so aptly: "the penalty

sought to be imposed on the [landowner] is so disparate to the ordinary penalty . . . so as to render it void as discriminatory and arbitrary." *Id.* at 557. The fatal congruence of *Middlesboro* to the case *sub judice* is both unavoidable and compelling. We hold that as of the date Dempsey purchased Riggs's property, its *nonconforming* use status remained intact and was neither vitiated nor impaired by the failure of Riggs to obtain an occupational license.[2]

For the foregoing reasons, the order of the Campbell Circuit Court is reversed, and this case is remanded with directions that the circuit court enter an order reversing the board's decision.

All concur.

---

**2.** We have not discussed Dempsey's assertion that his intended use of the property was and is a permitted use under the city's zoning ordinance as this issue was not passed on by the board or the circuit court.