The GREATER HARRODSBURG/MERCER COUNTY PLANNING & ZONING COMMISSION; Bob Upchurch, in his Official Capacity; Boone Logan, in his Official Capacity; John Goodlet, in his Official Capacity; Rosetta Johnson, in her Official Capacity; Robert Lewis, in his Official Capacity; Bill Randolf, in his Official Capacity; Mercer County; John Trisler, County Judge Executive; Mercer County Fiscal Court and its Members; Dennis Holiday, in his Official Capacity; Larry Peyton, in his Official Capacity; J.B. Claunch, in his Official Capacity; Wayne Jackson, in his Official Capacity; Wayne Russell, in his Official Capacity; and Bill Waggener, in his Official Capacity, Appellants,

v.

Jill ROMERO and Andrew Romero, Appellees.

and

The Greater Harrodsburg/Mercer County Board of Adjustments; Bob Upchurch, in his Official Capacity; Chad Horn, in his Official Capacity; August Faeth, in his Official Capacity; The City of Harrodsburg; Mayor Lonnie Campbell; The City of Harrodsburg City Commission; Joe Hood, in his Official Capacity; Kevin Perkins, in his Official Capacity; Eddie Long, in his Official Capacity; and Jack Springate, in his Official Capacity, Appellants,

v.

Jill Romero and Andrew Romero, Appellees.

Nos. 2006–CA–002623–MR, 2006–CA–002651–MR.

Court of Appeals of Kentucky.

March 28, 2008.

Shelby C. Kinkead, Jr. Lexington, KY, for appellants The Greater Harrodsburg/Mercer County Planning & Zoning Commission; Bob Upchurch, in his Official Capacity; Boone Logan, in his Official Capacity; John Goodlet, in his Official Capacity; Rosetta Johnson, in her Official Capacity; Robert Lewis, in his Official Capacity; Bill Randolf, in his Official Capacity; Mercer County; John Trisler, County Judge Executive; Mercer County Fiscal Court and its Members; Dennis Holiday, in his Official Capacity; Larry Peyton, in his Official Capacity; J.B. Claunch, in his Official Capacity; Wayne Jackson, in his Official Capacity; Wayne Russell, in his Official Capacity; and Bill Waggener, in his Official Capacity.

David Patrick, Harrodsburg, KY, for appellants The Greater Harrodsburg/Mercer County Board Of Adjustments; Bob Upchurch, in his Official Capacity; Chad Horn, in his Official Capacity; August Faeth, in his Official Capacity; The City of Harrodsburg; Mayor Lonnie Campbell; The City of Harrodsburg City Commission; Joe Hood, in his Official Capacity; Kevin Perkins, in his Official Capacity; Eddie Long, in his Official Capacity; and Jack Springate, in his Offical Capacity.

Rena G. Wiseman, David T. Royse, Susan E. Bryson, Lexington, KY, for appellees.

Before THOMPSON, Judge; BUCKINGHAM and HENRY, Senior Judges.[1]

## OPINION

THOMPSON, Judge.

In this zoning dispute, the circuit court granted Jill Romero and Andrew Romero summary judgment on the basis that the Romeros' operation of a bed and breakfast was a legal nonconforming-use that could not be prohibited by the Greater Harrodsburg/Mercer County Planning and Zoning Commission. We agree.

In January 2005, the Romeros relocated from California to Harrodsburg, Kentucky, where they purchased property located at 558 Aspen Hall Drive, known as Aspen Hall Manor (Aspen Hall). Aspen Hall is located in the R–2 zone in Harrodsburg, a medium density, residential district.

Soon after purchasing the property, the Romeros prepared to open Aspen Hall as a bed and breakfast, tearoom, and catering service. At that time, the R–2 zone in effect permitted bed and breakfasts with a maximum of four rooms as an accessory use. According to the Harrodsburg Zoning Ordinance, an accessory use is one "customarily incidental to the use of a building for dwelling purposes...." Permitted accessory uses did not require approval from the Board of Adjustment or the Planning Commission.

The Romeros applied for, and obtained, a business license effective January 1, 2005, and contacted the Mercer County Health Department to determine if their

1. Senior Judges David C. Buckingham and Michael L. Henry sitting as Special Judges by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

food service facilities met applicable standards. They renovated the kitchen and purchased the necessary equipment for operation of a tearoom. When the renovations were completed, the Romeros obtained a Food Service Establishment permit. They were advised by the Health Department that a separate bed and breakfast permit was unnecessary.

In April 2005, twenty of the Romeros' neighbors complained to the Planning Commission that the Romeros were operating a restaurant at Aspen Hall and requested that term "tearoom" be defined. The Romeros were unaware of neighbors' complaints and, therefore, did not attend this initial meeting. The Commission agreed to place a moratorium on tearoom conditional use permits until a definition for "tearoom" could be adopted.

On April 18, 2005, Jill Romero appeared before the Planning and Zoning Commission and proposed that Aspen Hall be operated at two seatings, at 11:00 a.m. and at 1:00 p.m., Monday through Saturday. Subsequently, the Commission recommended the adoption of a definition of a "tearoom" as a facility open for no more than four hours per day with a capacity to serve a maximum of twenty people per seating. On July 25, 2005, the Mercer County Fiscal Court enacted an ordinance requiring that the operator of a bed and breakfast planning to have a tearoom or cater special events and weddings, apply to the Board of Adjustments for a conditional use permit.

In November 2005, the Romeros were notified that the operation of a gift shop and spa at Aspen Hall were not permissible accessory uses or those for which they had obtained a conditional use permit. They were directed to cease such operations. They were later informed that any such uses of the property would require a conditional use permit.

In late December 2005, the Romeros applied for a permit to the Board of Adjustment for additional uses including catering private parties, Sunday brunches, Sunday special events, and a gift shop. The Board of Adjustment concluded that because the Romeros engaged in prohibited uses after the adoption of the July 25, 2005, ordinance, the entire operation of Aspen Hall fell within the ambit of the ordinance. As a result the Board imposed the following restrictions on Aspen Hall's accessory uses: (1) that the Romeros maintain off street parking for twenty vehicles on the property; (2) that on street parking be utilized in accordance with applicable ordinances; (3) that the tearoom be limited to two seatings of no more than twenty patrons per seating at 11:00 a.m. and 3:30 p.m.; (4) that the tearoom not be operated on Sunday; (5) that wedding and special events be limited to two per month and not exceed twelve per year and be conducted between 4:00 p.m. and 9:00 p.m.; (6) that all events be conducted within the Aspen Hall building; (7) that no alcoholic beverages be served; (8) that guests of Aspen Hall be confined to the premises; (9) that all additional onsite services were prohibited; and (10) that the garbage dumpster be situated away from public view.

Confronted with these restrictions, on February 13, 2006, the Romeros filed an action for a declaratory judgment requesting the court determine that the restrictions on the uses of Aspen Hall as a tearoom and the catering of special events were illegally imposed because those uses existed prior to the adoption of the ordinance on July 25, 2005. The Romeros conceded that the operation of a gift shop at Aspen Hall was not a permitted accessory use and removed it from the premises.

The issue presented is whether the Romeros expanded the permissible acces-

sory uses of Aspen Hall so that the Board could legally require a conditional use permit for the activities conducted. The circuit court held that the Board could not impose such a requirement. In doing so, it found:

At the time the plaintiffs received the aforesaid license, weddings, special events, catering, and tearooms were permitted accessory uses in conjunction with the operation of a bed and breakfast. There were no limitations placed upon the frequency of events, hours these types of functions could be held, or number of people who could attend. ... There is also no question that the plaintiffs offered weddings, receptions, catering, and special events prior to the passage of the amended ordinance. The aforesaid actions establish a lawful, nonconforming-use as a matter of law.

The circuit court properly framed the issue as whether the Board retained the authority to reasonably restrict the accessory uses of the property that existed prior to the adoption of the amended ordinance.

A nonconforming-use is one legally in existence prior to the adoption of a zoning regulation under which it is prohibited. The right to continue such uses by the property owner free from government intervention is based in constitutional law and enjoys broad constitutional protection. *Dempsey v. Newport Board of Adjustments*, 941 S.W.2d 483 (Ky.App.1997).

Our standard of review in zoning cases reflects the constitutional implications of such regulations. As stated in *Crain v. City of Louisville*, 298 Ky. 421, 426, 182 S.W.2d 787, 790 (Ky.1944):

We are committed to the sound principal that the court will not interfere with a decision of the Board of Adjustments and Appeals where a factual matter is involved unless it seems to have been abused. But as there is no substantial conflict in the evidence as to the character of use to which the property is sought to be put, it is a matter of judicial construction. Too strict an interpretation in respect of the application to an asserted prohibited use ought not to be given a zoning ordinance, for our Kentucky Bill of Rights declares acquiring and protecting property as one of the great and essential principles of liberty and free government and as an inherent an inalienable right. (internal citations and quotations omitted).

We conclude that there are no material issues of fact in dispute; therefore, the question is whether the Romeros were entitled to summary judgment as a matter of law. *Steelvest v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky.1991).

KRS 100.253 provides:

(1) The lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it may be continued, although such use does not conform to the provisions of such regulations, except as otherwise provided herein.

■ Although afforded protection, a nonconforming-use, by nature, is not necessarily favored by the community as reflected in the subsequent adoption of zoning regulations prohibiting such use. As a result, the courts seek a proper balance between the welfare of the public and the rights of the individual property owner. *Perkins v. Joint City–Council Planning Commission*, 480 S.W.2d 166 (Ky.1972).

■ To balance those interests, the courts will not invoke the nonconforming-use doctrine when the use of the property has transformed the inherent nature of the pre-existing primary use. The resolution of what constitutes an existing use is defined on a case-by-case basis. *Perkins*, 480 S.W.2d at 167.

■ The Board contends that although the Romeros could legally operate a bed and breakfast and, as incidental uses, operate a tearoom and occasionally cater weddings, they could not operate a full service restaurant and meeting facility. To that extent, they claim the secondary accessory uses were transformed into primary uses unrelated to a bed and breakfast. We disagree.

Factually similar to the present case, in *Board of Adjustments, Bourbon County v. Brown*, 969 S.W.2d 214 (Ky.App.1998), the court held that an addition to the structure to accommodate a restroom and an increase in the number of auctions held at an auction house did not enlarge the nonconforming-use. Quoting *A.L. Carrithers & Son v. City of Louisville*, 250 Ky. 462, 469–470, 63 S.W.2d 493, 497 (1933), the court held that the fundamental purpose, characteristics of the building, and the activities remained the same. *Id.* at 216, 63 S.W.2d 493.

Likewise, in *Franklin Planning and Zoning Commission v. Simpson County Lumber Company*, 394 S.W.2d 593 (Ky. 1965), the Court found that the storage of logs was not such a deviation from the owner's prior use of the property on which to store bricks so as to constitute an impermissible expansion of the use of the property.

Prior to the passage of the amended ordinance, the Romeros utilized Aspen Hall as not only a bed and breakfast but also, as accessory uses, operated a tearoom, catering service, and held events such as weddings. These are precisely the same uses the Board seeks to restrict. Absent from the record is evidence that establishes that Aspen Hall offers any services materially different than those offered prior to the adoption of the amended ordinance. What can be gleaned from the record is that, at the time the Romeros purchased the property and began their business, no zoning ordinance prohibited the uses of the property now questioned. Only after neighbors became disgruntled in this otherwise residential area, did the Board seek to limit such uses.

The courts have historically cautioned against such reactive local legislation. This view was articulated in *A.L. Carrithers & Son*, 63 S.W.2d at 495:

> The evidence as to the resulting inconveniences and noises incident to the use of the building and land upon which it is situated as it existed at the time of the adoption of the zoning ordinance, and since, is wholly immaterial, and sheds no light on the decisive issue. If this were an action to require the cessation of a prohibited business or a prosecution to abate a nuisance, such evidence would be material. The enforcement of the provisions of a zoning ordinance dealing with structural alterations may not be resorted to to accomplish the purpose of such an action or prosecution. There is no evidence showing, or tending to show, that the alteration of the plant, as proposed and requested by the application for the permit, will increase, or at all affect, or create, any additional noise, smoke, or other inconveniences.

Of course, should the activities on the premises of Aspen Hall or the use of that property escalate to the level of a nuisance, surrounding property owners can seek the appropriate legal remedies. We hold, however, that such a result cannot be accomplished through zoning and deprive the Romeros of an otherwise legal nonconforming-use of their property.

■ In response to the undeniable facts that the use of Aspen Hall is the same as that prior to the adoption of the amended ordinance, the Board urges this court to deny the Romeros the continued use of their property because they failed to ob-

tain the required Health Department permits. We observe that the facts indicate to the contrary and emphasize that such is not relevant to the present inquiry. Whether or not the Romeros had the proper permit from the Health Department is not a zoning concern. *Dempsey v. Newport Bd. of Adjustments,* 941 S.W.2d 483, 485 (Ky.App.1997).

Finally, we reject the Board's contention that the Romeros are estopped from denying the restrictions, including the operation of the tearoom. The elements of equitable estoppel are:

(1) conduct which amounts to false representation or concealment of material facts or at least which is calculated to convey the impression the circumstances are in a particular state that is inconsistent with the party's subsequent position; (2) the intention or expectation that such conduct shall influence the other party to act; and, (3) knowledge, constructive or actual, of the true facts. The party claiming the estoppel must show: (1) a lack of knowledge and of the means of knowledge of the true facts; (2) a good faith reliance on the words or conduct of the party to be estopped; and, (3) a detrimental change in position or status by the party claiming estoppel due to such reliance.

*City of Shelbyville ex rel. Shelbyville Mun. Water and Sewer Com'n v. Com., Natural Resources and Environmental Protection Cabinet,* 706 S.W.2d 426, 429 (Ky.App. 1986). The Board attempts to invoke the doctrine claiming that the "Romeros clear-ly misrepresented to the Planning and Zoning Commission and to the Board of Adjustment that they would operate their tearoom for two seatings only, the last ending at 3:15 p.m.", that the tearoom would be closed on Sundays, and wedding and receptions would be limited. It contends that because of Ms. Romero's representations, it imposed similar restrictions on accessory uses.

When applied to the elements of equitable estoppel, the facts recited by the Board simply do not support its contention. To suggest that it passed a zoning ordinance restricting the use of all bed and breakfasts because of statements made by a single owner as to her intended hours of operation is not one that this Court is willing to accept. Faced with the complaints of their neighbors, the Romeros informed the Board of their intended use of the property and did not make material factual misrepresentations. Moreover, the Board fails to identify how it was harmed by its alleged reliance. This is not a case where the doctrine is applicable.

Based on the foregoing, the order granting summary judgment is affirmed.

ALL CONCUR.