William LEGRAND; Elsie Ewbank; Virginia Ewbank; and Kathy Cook, Appellants,

v.

Robert EWBANK; Winslow Baker, In His Official Capacity as Gallatin County Zoning Enforcement Officer and Zoning Administrator; and Nugent Sand Company, Appellees.

No. 2007–CA–001770–MR.

Court of Appeals of Kentucky.

Aug. 29, 2008.

Discretionary Review Denied by Supreme Court June 17, 2009.

Thomas J. Fitzgerald, Frankfort, KY, for appellants.

George L. Seay, Jr., Lesly A.R. Davis, Lexington, KY, Jean W. Bird, Louisville, KY, for appellee.

Before: THOMPSON and VANMETER, Judges; HENRY,[1] Senior Judge.

*OPINION*

THOMPSON, Judge.

This is an appeal from an order of the Gallatin Circuit Court that affirmed a ruling by the Gallatin Board of Adjustments (Board) that Nugent Sand Company had nonconforming-use rights to conduct sand and gravel mining operations on all lands it owned that were under permit at the time Gallatin County adopted comprehensive planning and zoning provisions. Under the provisions, the property owned by Nugent was zoned R1–A, designated for single family residential and/or agricultural activities. The Board determined that Nugent's operations were a preexisting nonconforming use and extended to the total acreage owned at the time the applicable zoning ordinance was passed. The Gallatin Circuit Court affirmed and this appeal followed.

In April 2001, the Environmental and Public Protection Cabinet issued Nugent a non-coal mining permit for a surface open pit sand and gravel mining operation. Although the original permit encompassed 79.21 acres, it was amended to include an additional 148.06 acres causing approximately 227 acres to be encompassed within the permit. The applicable ordinance became effective January 30, 2002. However, Nugent continued to operate its sand and gravel operations based on a "pre-existing [sic] nonconforming use" exception.

Kathy Cook[2] and Rosalie Cooper, who resided in the area, filed a challenge to the permit on the basis that Nugent failed to comply with statutory and regulatory criteria. As a result of the administrative action, on May 3, 2003, the Secretary of the Cabinet entered an order suspending Nugent's permit until such time as all applicable statutory and regulatory criteria were satisfied. The permit and amendment were reissued in October 2003.

Cook and Cooper appealed alleging that the Secretary should have revoked the permit and had no authority to suspend the permit. The Franklin Circuit Court affirmed and an appeal was filed in this Court. In *Cook v. Environmental and Public Protection Cabinet*, 208 S.W.3d 266 (Ky.App.2006), this Court affirmed, holding that the Secretary had the authority to suspend the permit and did not have to revoke the permit.

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Kathy Cook is an appellant in the present appeal.

While the challenge to the permit was progressing through the administrative and judicial process, Nugent continued its operations on the premises. Apparently forecasting possible failure in the appellate courts and dissatisfied with the continued operation of the mining operation, Cook and the remaining appellants requested an opinion and formal determination on whether the use of the property entitled it to status as a preexisting nonconforming use and if so, whether the use was limited to the property actively mined prior to the enactment of the applicable ordinance. Enforcement Officer Winslow Baker responded to the request and determined that Nugent was permissibly operating its business as a nonconforming use and that its operation properly encompassed the total acreage owned as of January 30, 2002. The Board issued a ruling affirming the Enforcement Officer's opinion. On appeal, the Gallatin Circuit Court found that there were no material issues of fact in dispute and affirmed. This appeal followed.

█ All agree that there is no material issue of fact in dispute and the issue presented is easily framed: Did the Board err when it included property not actively mined at the time the zoning ordinance was enacted as a nonconforming-use exception to the ordinance's scope?

█ Zoning ordinances necessarily implicate constitutionally protected interests. This is particularly true when an ordinance forbids the use of property previously permitted and conducted on the property. Therefore, a use in existence prior to the adoption of a zoning regulation under which it is prohibited will be exempted and deemed a preexisting nonconforming use. *Greater Harrodsburg/Mercer County Planning & Zoning Com'n v. Romero*, 250 S.W.3d 355 (Ky.App.2008). The doctrine was explained in *Darlington v. Board of Councilmen of City of Frank-*fort, 282 Ky. 778, 140 S.W.2d 392, 396 (1940):

> Obviously, it is not the amount of money expended which determines the vesting of the right, since one property owner might be required to expend more in the preliminary steps of altering his property for the conduct of a particular business than his neighbor would be compelled to expend in completing the alteration of his property for a different type of business. On the other hand, the mere ownership of property which could be utilized for the conduct of a lawful business does not constitute a right to so utilize it (*Cayce v. City of Hopkinsville*, 217 Ky. 135, 289 S.W. 223) which cannot be terminated by the enactment of a valid zoning ordinance, as such a concept involves art irreconcilable contradiction of terms. It would seem, therefore, that the right to utilize one's property for the conduct of a lawful business not inimicable to the health, safety, or morals of the community, becomes entitled to constitutional protection against otherwise valid legislative restrictions as to locality, or, in other words, becomes "vested" within the full meaning of that term, when, prior to the enactment of such restrictions, the owner has in good faith substantially entered upon the performance of the series of acts necessary to the accomplishment of the end intended.

The constitutional protection afforded property owners and its limitations have been codified in KRS 100.253 which provides:

> (1) The lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it, may be continued, although such use does not conform to the provisions of such regulations, except as otherwise provided herein.

(2) The board of adjustment shall not allow the enlargement or extension of a nonconforming use beyond the scope and area of its operation at the time the regulation which makes its use nonconforming was adopted, nor shall the board permit a change from one (1) nonconforming use to another unless the new nonconforming use is in the same or a more restrictive classification, provided, however, the board of adjustment may grant approval, effective to maintain nonconforming-use status, for enlargements or extensions, made or to be made, of the facilities of a nonconforming use, where the use consists of the presenting of a major public attraction or attractions, such as a sports event or events, which has been presented at the same site over such period of years and has such attributes and public acceptance as to have attained international prestige and to have achieved the status of a public tradition, contributing substantially to the economy of the community and state, of which prestige and status the site is an essential element, and where the enlargement or extension was or is designed to maintain the prestige and status by meeting the increasing demands of participants and patrons.

"Use" means what is "customarily or habitually done or the subject of a common practice." *Durning v. Summerfield*, 314 Ky. 318, 322, 235 S.W.2d 761, 763 (1951). The determination of what constitutes an existing use is made on a case-by-case basis. *Perkins v. Joint City–Council Planning Commission*, 480 S.W.2d 166, 167 (Ky.1972).

 There is no dispute that Nugent was mining portions of the property at the time the ordinance was enacted. Appellants argue that only the land actively mined at that time can be lawfully considered as a preexisting nonconforming use.

In support of their contention, they recite the general rule for property to qualify as a nonconforming use.

"[T]he use must have been actually demonstrated prior to the zoning ordinance. Mere contemplation of use of the property for a specific purpose is not sufficient to place it in a nonconforming-use status. Nor is the purchase of the property accompanied by an intent to use it for a specific purpose sufficient." (citations omitted)

*Id.* at 168. As a matter of policy and consistent with the spirit of zoning laws, nonconforming uses are to be gradually eliminated and are to be held strictly within their boundaries. An existing use cannot be enlarged nor extended and no substantially different use is permitted. *Attorney General v. Johnson*, 355 S.W.2d 305 (Ky.1962). Recognizing these limitations, we nevertheless affirm and agree with the Board that the entire acreage encompassed within the permit is a legal nonconforming use.

Our reasoning is premised on the nature of mining operations, which generally begin in one area and, after its resources are exhausted, spread to additional property until all the resources are depleted. Often referred to as a diminishing asset, mined natural resources are considered a separate category of nonconforming use attributable to the uniqueness of the operation. We find the Illinois Supreme Court's expression of the applicable reasoning persuasive:

This is not the usual case of a business conducted within buildings, nor is the land held merely as a site or location whereon the enterprise can be conducted indefinitely with existing facilities. In a quarrying business the land itself is a material or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts

the ordinary concept of use, as applied in determining the existence of a nonconforming use, must yield to the realities of the business in question and the nature of its operations. *We think that in cases of a diminishing asset the enterprise is "using" all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation.* It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed. Obviously, it cannot operate over an entire tract at once. *Du Page County v. Elmhurst–Chicago Stone Co.,* 18 Ill.2d 479, 484–485, 165 N.E.2d 310, 313 (1960) (emphasis added).

As a practical matter, it is not feasible for a mine operator to conduct mining operations over the entire property. Thus, it is common practice that one area of property be mined until the exhaustion of its resources before additional areas within the same tract are mined. This proposition we accept and we agree that this case warrants an approach distinguishable from those where a structure is placed upon the land or the land is used other than for the removal of natural resources. However, we are not abandoning the basic premise that all nonconforming-use cases must be examined on a case-by-case basis and further conclude that a mere unexpressed intent to mine the property is insufficient.

Were we to hold that mere ownership of property with the intent of mining its resources is sufficient to establish a nonconforming use, mining could be expanded indefinitely under the auspices of a nonconforming use. We believe, therefore, that such uses are not without limitation.

Although we do not impose the impractical limitation that the property be actively mined prior to the enactment of the ordinance, it must have been demonstrably dedicated to that use. This is a finding of fact to be made by the zoning authority and absent a lack of substantial evidence, one that this Court will not disturb. *Bowling v. Natural Resources and Environmental Protection Cabinet,* 891 S.W.2d 406, 409 (Ky.App.1994).

In this case, the entirety of the property was dedicated to the mining of sand and gravel. The property is one contiguous tract and no additional tracts are sought to be mined. Prior to the enactment of the ordinances, Nugent obtained a permit that encompassed approximately 227 acres. Michael Wedding, Vice President of Operations for Nugent, testified that the company is a sand and gravel mining operation and sends the mined material to a facility it owns on-site for the purpose of screening and sizing. It is then placed in stockpiles for sale. Since obtaining its permit in 2001, Nugent has invested substantial amounts of money developing the permitted property including building its plant, constructing facilities, undertaking archaeological surveys, and other activities. During the time its permit was suspended, Nugent continued to sell sand and gravel from stockpiles and never intended to abandon its use of the property as a mining operation.

The Board's determination was supported by substantial evidence. Consistent with KRS 100.253, it appropriately defined the scope of the preexisting nonconforming use to the land owned by Nugent and encompassed within the mining permit on the date the ordinance was enacted. The order of the Gallatin Circuit Court is affirmed.

ALL CONCUR.