RENDERED: APRIL 15, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0204-MR

STUFF PROPERTIES, LLC                                          APPELLANT

v.          APPEAL FROM CLARK CIRCUIT COURT
            HONORABLE JEAN C. LOGUE, JUDGE
            ACTION NO. 19-CI-00029

WINCHESTER/CLARK COUNTY
BOARD OF ADJUSTMENTS; AND
TRESA BRIDGES                                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, LAMBERT, AND K. THOMPSON, JUDGES.

JONES, JUDGE: Stuff Properties, LLC, ("Stuff") appeals an opinion and order of

the Clark Circuit Court affirming a determination of the Winchester/Clark County

Board of Adjustments that Stuff unlawfully expanded a nonconforming use of its

property in Winchester, Kentucky. Upon review, we affirm.

# I. BACKGROUND

On or about November 22, 2010, Stuff acquired approximately nine (9) acres located at 6169 Lexington Road (US 60), Winchester, Kentucky (hereinafter "the Property"). At the time Stuff purchased it, most of the Property had been utilized for recycling of one kind or another (junk automobiles, auto parts, and surplus army goods) since at least the mid-1990's. To date, Stuff has continued utilizing the Property for that purpose. On November 15, 2011, in a letter responding to an inquiry from Stuff about the propriety of its use of the Property, the Winchester/Clark County Planning Commission notified Stuff that "[t]he property located at 6169 Lexington Road is zoned B-4 (General Business). Automobile recycling is not a permitted use in that zone. Automobile recycling is only a legal land use in the I-2 (Heavy Industry) zone." The Planning Commission added, however, that because it appeared "automobile recycling" may have been regularly occurring on the Property without incident for more than ten years, it might qualify as a legal, nonconforming use pursuant to KRS[1] 100.253(3).

Accordingly, Stuff filed an application with the Winchester/Clark County Board of Adjustments ("Board") seeking a zoning interpretation that its scrap and recycling operations qualified as a legal, nonconforming use within the meaning of KRS 100.253(2). After considering Stuff's application during a special

---

[1] Kentucky Revised Statutes.

meeting on February 13, 2012, the Board confirmed that Stuff's "existing metal recycling land use" was a "heavy industrial use" suited for an I-2 district, but that it qualified as a legal nonconforming use on Stuff's Property, which had been zoned B-4. According to the minutes, the Board also "expressed concerns that the recycling business might move closer to the road and the Board doesn't want that." As such, the Board defined the scope of Stuff's nonconforming use, voting unanimously that it "includes the 7 +/- acres behind the existing line of buildings and to include the interior of those buildings, that fronts US 60," and that "recycling cannot be extended beyond the fronts of the buildings."

On February 15, 2012, the Board's director of planning and community development, Rhonda Cromer, then wrote a follow-up letter to Stuff summarizing the pertinent aspects of the Board's decision, stating in relevant part:

- Buildings could be remodeled or reconfigured as long as no additional square footage was added to the existing square footage of structures currently on the property;

- Any changes to buildings should be done in such a way as to continue screening the recycling operation from Lexington Road;

- All recycling must be done within the structures or behind them so that it cannot be seen from Lexington Road[.]

On March 21, 2013, Stuff purchased what will hereinafter be referred to as the "Lot," an approximately one-acre tract of land that not only adjoined the

front of the Property, but was situated between Lexington Road and the buildings on the Property that the Board had delineated as the boundary for "screening" Stuff's "recycling operation from Lexington Road," per Cromer's letter. The Lot, which had another small building situated upon it, was located at 6223 Lexington Road. The Lot was also located in a B-4 zoning district and, prior to its acquisition by Stuff, it had never been utilized for any purpose beyond what its B-4 classification permitted. Following the acquisition, however, Stuff proceeded to utilize the Lot in conjunction with its recycling business, *i.e.*, "to park trucks, trailers, equipment, and to store recycled materials, both indoors and in containers."[2]

On May 5, 2016, the Interim Director of Planning and Community Development, Joshua Cook, issued a Notice of Violation ("NOV") to Stuff for what he regarded as the illegal expansion of Stuff's nonconforming use relative to the Property. In pertinent part, his NOV explained:

> The property located at 6169 Lexington Road,
> Winchester, Kentucky is in violation of the Winchester
> Clark County Zoning Ordinance. The property is zoned
> B-4 (General Business) which allows for the storage of
> MATERIALS on site, behind the existing building lines.
> However, currently the property is storing both material,
> equipment, trash and recycling bins, and tractor trailers at
> or near the property line. This is not in conformance to
> either the Zoning Ordinance for the B-4 Zoning District

---

[2] Stuff offered this succinct description of its use of the Lot in a memorandum of law it filed with the circuit court on December 5, 2019.

-4-

nor your February 13, 2012 Zoning Interpretation granted by the Winchester/Clark County Board of Adjustments that specifically states, ". . . recycling cannot be extended beyond the fronts of the buildings."

Please remove all materials, debris, vehicles, tractor trailers, trash and recycling dumpsters, and all other items behind the existing line of buildings by Monday, May 20, 2016. Violations to the zoning ordinance may result in fines of $500.00 per day per violation for as long as the violation continues if the property is not brought into compliance by the deadline.

Stuff acknowledges it received this NOV and claims it responded by erecting a "privacy screen" partially enclosing the Property; but that it continued storing recycling materials, including equipment, trash, recycling bins, and tractor trailers in front of the building lines and on the Lot. Stuff further claims that because the Board took no further immediate action against it regarding the NOV, it assumed the matter had been resolved. The Board, on the other hand, claims it took no immediate action against Stuff regarding the NOV because the NOV was "lost" during the transition of its directors and was not brought to its attention until approximately three years later, as discussed later in this Opinion.

That aside, the next significant development in this matter occurred on September 27, 2018, when, in response to a complaint from residents in the community, the Board held a special meeting to determine whether the scope, area, and usage of the Property had changed since the Board's prior 2012 zoning interpretation. The Board listened to comments and questions from various

-5-

individuals, including appellee Bridges and Stuff's counsel, although it did not render a decision concerning the expansion of the nonconforming use. Instead, the Board announced it would take up the matter at the next meeting allowing time to review the issues presented. On October 4, 2018, another public meeting was held during which the Board went into closed session to discuss whether Stuff was violating the Board's 2012 Zoning Interpretation. Upon returning to open session, the Board voted unanimously that Stuff had expanded its recycling operations beyond the front of the buildings and determined "the storage of recycling materials in containers or on the ground is found to be accessory to the recycling business and is prohibited." The Board's decision on October 4, 2018, was not appealed.

On November 8, 2018, Bridges then submitted a written complaint to the Board pursuant to KRS 61.846(1) (and copied Stuff's counsel) alleging the Board's closed session meeting and resulting decision on October 4, 2018, had violated Kentucky's Open Meetings Act, KRS 61.800-850 (the "OMA"). Regarding what the Board should do to remedy its violation, Bridges requested the following relief:

> 1. Acknowledge that the actions of the Board of Adjustment of going into closed session during the meeting of October 4, 2018[,] violated the requirements of KRS 61.810, KRS 61.815(1)(a), KRS 61.815(1)(b), and KRS 61.815(1)(c);

2. Vacate the motion regarding Stuff's Recycling that was approved by the Board of Adjustment based on the discussion in the unlawful closed session; and

3. Schedule this matter for a Meeting of the Board of Adjustment within sixty (60) days for further action in open session on the complaints that the scope, area, and intensity of the usage of the property at 6169 Lexington Road has expanded beyond the nonconforming use recognized in February, 2012, in a manner consistent with the Kentucky Open Meetings Act.

On November 13, 2018, the Board served Bridges a timely response to her complaint[3] (and copied Stuff's counsel on November 18, 2018), agreeing that it had indeed violated the Act as alleged. Additionally, the Board stated:

Following the October 4, 2018, meeting and before approval of the minutes, it was discovered that a Notice of Zoning Violation issued by an interim Planning Director, May 5, 2016, had been served upon Stuffs [sic] Properties LLC, owner of 6191 Lexington Road, Clark County, Kentucky. The Notice is attached.

The Notice was not brought to the attention of the Planning Staff, the Board Members or Counsel. As such, the Complainant, the property owner, its Counsel, the Board or members of the public did not have the opportunity to address the May, 2016 Notice during the October, 2018 meeting.

---

[3] KRS 61.846(1), part of Kentucky's Open Meetings Act, provides in relevant part, "The public agency shall determine within three (3) days, excepting Saturdays, Sundays, and legal holidays, after the receipt of the complaint whether to remedy the alleged violation pursuant to the complaint and shall notify in writing the person making the complaint, within the three (3) day period, of its decision." While there were five days between Bridges' complaint and the Board's response, the Board's response was nevertheless timely because November 10 and November 11, 2018, were respectively a Saturday and Sunday.

The Board intends to convene a duly noticed Public Meeting in January 2019, to remedy the errors and omissions as follows:

(i) Review, the Board's final action of October 4, 2018, publicly announced following closed session with taking into account the May 2016 Notice of Violation pending further open session consideration, discussion, motion, second and vote.

(ii) Consider testimony, comment and evidence offered by the public, Complainant, or property owner regarding the May, 2016, Notice of Violation with reference to the February, 2012, Zoning Ordinance Interpretation and present use of the property.

(iii) The conduct of the September 27, 2018, videotaped, open meeting conformed to the law as it pertained to the public comment and presentation of evidence with respect, to 6169 Lexington Road as a non-conforming use (KRS 100.253). The October 4, 2018 vote of the Board constituted a final action and is subject to the appeal requirements of KRS 100.347. A de-novo hearing and re-presentation of the matters previously offered is not warranted; provided however, review, discussion, determination, motion and vote of the Board with respect to the proposed January 2019, meeting shall occur in open session.

The remedial public meeting was held on January 3, 2019, and at the close of the meeting the Board reaffirmed that Stuff's recycling operations could not extend past the front of the buildings on the Property. Borrowing from the language of the May 5, 2016 NOV, the Board also determined that "storage of recycled materials in containers or on the ground is found as an accessory to the recycling business and prohibited, including materials, equipment, trash, recycling

-8-

bins, tractor trailers, trucks, cranes and all other items associated with the recycling process cannot be stored in the *front* of the buildings" located on the Property. (Emphasis added.) As noted, the Lot is undisputedly situated in *front* of the buildings located on the Property. With that in mind, the minutes of the January 3, 2019 meeting reflect that the Board discussed the *Property* and the *Lot* over the course of its deliberations, and that it intended for its decision to encompass and apply with equal force to *both* parcels.

On January 16, 2019, Stuff appealed the Board's decision to Clark Circuit Court pursuant to KRS 100.347(1), seeking equitable relief and a declaration of rights pursuant to KRS 418.040 and KRS 418.045. Later, in a pre-trial memorandum of October 22, 2019, Stuff concisely summarized its arguments regarding why, in its view, the Board's January 3, 2019 decision was untenable. We quote Stuff's summary for clarity and context:

### THE ISSUES IN DISPUTE

In 2012 the Board acknowledged that Stuff's use of the 9-acre tract for recycling activities was a permissible non-conforming use, while expressing the desire that "recycling" not be conducted "in front of the buildings". The current Board now says that any "accessory use" (which apparently means any use that furthers those recycling activities) in front of the buildings (though we are left to guess exactly where that is) is prohibited. The Board's current interpretation of its earlier admonition, and of the County Zoning Ordinance have created the current issue.

## THE NATURE OF STUFF'S LEGAL NONCONFORMING USE

It is Stuff's position that:

1. The 9-acre Property and the 1-acre Lot are legally distinct, separate parcels of land, each with recognized permissible uses. They have not been consolidated into one parcel and remain separate parcels of land.

2. The Board of Adjustment has no authority over Stuff's business or activities generally. Its authority is limited to preventing enlargement of Stuff's non-conforming activities. Activities which conform to the Ordinance are, by definition, conforming and particularly if, as here, located elsewhere, and are not subject to the Board's regulation.

3. Attached as Exhibit A is an excerpt from the Zoning Ordinance in which is listed the uses permitted in a B-4 Zone. The uses which the Board here attempts to prohibit are, storage of recycled material, both in buildings, in trailers, and containers; parking of trucks and trailers used to haul scrap metal and materials; and parking of equipment. These activities are expressly permitted under the Zoning Ordinance in a B-4 zone and are not, in and of themselves, "recycling".

4. The Board ruled on the matter on October 4, 2018, from which no appeal was taken. Then, on January 3, 2019, without further evidence, the Board significantly expanded and broadened its ruling prohibiting all but employee and customer parking in front of the buildings. This is both arbitrary because there were no changes in the facts to justify the change, and an impermissible revisiting of an action that had become final.

Ultimately, the circuit court affirmed the propriety of the Board's final action. This appeal followed.

-10-

## II. STANDARD OF REVIEW

"An administrative agency is prohibited from acting in an arbitrary manner by § 2 of the Kentucky Constitution." *Bunch v. Personnel Bd., Commonwealth of Kentucky*, 719 S.W.2d 8, 10 (Ky. App. 1986) (citing *Pritchett v. Marshall*, 375 S.W.2d 253 (Ky. 1963)). "[J]udicial review of administrative action is concerned with the question of *arbitrariness*." *American Beauty Homes Corp. v. Louisville & Jefferson Cnty. Planning & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964). The scope of this judicial review extends to three fundamental grounds: "(1) action in excess of granted powers, (2) lack of procedural due process, and (3) lack of substantial evidentiary support[.]" *Id.* This Court's standard of review for an administrative adjudicatory decision is the clearly erroneous standard. *Stallins v. City of Madisonville*, 707 S.W.2d 349, 351 (Ky. App. 1986). A decision is clearly erroneous if it is not supported by substantial evidence. *Id.*

> Substantial evidence is defined as evidence, taken alone or in light of all the evidence, that has sufficient probative value to induce conviction in the minds of reasonable people. If there is substantial evidence to support the agency's findings, a court must defer to that finding even though there is evidence to the contrary. A court may not substitute its opinion as to the credibility of the witnesses, the weight given the evidence, or the inferences to be drawn from the evidence. A court's function in administrative matters is one of review, not reinterpretation.

-11-

*Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky. App. 2002) (footnotes omitted). "[A] reviewing court, whether it be one of the circuit courts, the Court of Appeals, or [the Kentucky Supreme Court], should refrain from reversing or overturning an administrative agency's decision simply because it does not agree with the agency's wisdom." *Kentucky Unemployment Ins. Comm'n v. Landmark Community Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 582 (Ky. 2002) (citation omitted).

### III. ANALYSIS

On appeal before this Court, Stuff argues the Board's decision was erroneous for largely the same reasons it asserted before the circuit court. First, as it did below, Stuff argues the Board lacked jurisdiction to vacate its October 4, 2018 decision and enter its decision of January 3, 2019. In support, Stuff notes that KRS 100.347(1) provides the exclusive means to challenge administrative action from a board of adjustment; it specifies in relevant part that all final actions of a board of adjustment which have "not been appealed within thirty (30) days shall not be subject to judicial review." And, Stuff points out, the Board's decision was not challenged by appellee Bridges until after that thirty-day period had expired.

We disagree. To be sure, administrative agencies derive their power and authority solely from delegations of power as set forth in statutes enacted by

-12-

the General Assembly. *See Fisher v. Commonwealth, Pub. Prot. Cabinet, Dep't of Hous., Bldgs. & Const., Div. of Plumbing*, 403 S.W.3d 69, 77 (Ky. App. 2013). Accordingly, the Board, as an administrative agency, "does not have any inherent or implied power to reopen or reconsider a final decision and . . . such power does not exist where it is not specifically conferred upon the agency[.]" *Kentucky Bd. of Medical Licensure v. Ryan*, 151 S.W.3d 778, 780 (Ky. 2004) (citing *Phelps v. Sallee*, 529 S.W.2d 361, 365 (Ky. 1975)).

That said, while the Board's enabling legislation did not permit the Board to reconsider or reopen its October 4, 2019 decision, the OMA – a separate delegation of power from the General Assembly – did authorize the Board to do so, despite appellee Bridges' failure to properly exhaust the administrative remedy specified in KRS 100.347(1). *See* KRS 61.848(5) (providing, as a remedy for an OMA violation, that "[a]ny rule, resolution, regulation, ordinance, or other formal action of a public agency without substantial compliance with the requirements of KRS 61.810, 61.815, 61.820, and KRS 61.823 shall be voidable[.]"); KRS 61.846(1) (obligating agencies to acknowledge alleged violations of the OMA, and authorizing agencies to provide a remedy).

Here, Bridges alleged the Board violated KRS 61.810, KRS 61.815(1)(a), KRS 61.815(1)(b), and KRS 61.815(1)(c). The Board agreed and was therefore authorized to address the alleged violations by voiding its October 4,

-13-

2018 order. Moreover, Stuff cites no authority – and we are aware of none – that prohibited the Board from thereafter conducting a remedial meeting and entering a new order in place of the one it vacated. Accordingly, the circuit court did not err in determining the Board acted properly in this respect.

Next, Stuff asserts a variety of arguments that may be collectively summarized as an overarching complaint that, in Stuff's view, the Board could not have properly defined "recycling" for zoning purposes to encompass the storage of recycled material, both in buildings, in trailers, and containers; or the parking of trucks and trailers used to haul scrap metal and materials; or the parking of equipment. In that vein, Stuff argues the Board: (1) could not have defined "recycling" consistently with that view by relying upon the Winchester/Clark County zoning ordinance itself, as the ordinance includes no definition of the word; (2) violated Stuff's due process rights[4] by relying upon the May 5, 2016

_____

[4] The circuit court concluded Stuff was provided adequate due process in this matter, explaining in relevant part:

> "The hallmark of procedural due process is 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Harrison Silvergrove Property, LLC v. Campbell County and Municipal Board of Adjustment*, 492 S.W.3d 908, 915 (Ky. App. 2016) (quoting *Hilltop Basic Res.*, 180 S.W.3d at 468). The record reflects that Stuff was provided clear and timely notice of the Board's meetings and the intended purposes of same. The record further demonstrates that Stuff, by and through counsel, was afforded the opportunity to be heard at a meaningful time and in a meaningful manner.

We agree with the circuit court's assessment that Stuff was provided adequate due process below. To the extent that Stuff's "due process" argument also takes issue with the Board's

-14-

NOV to conclude that "recycling" encompasses that definition; and therefore (3) had no basis for finding that its use of the Lot or the land in front of the buildings on the Property qualified as an illegal expansion of its nonconforming "recycling" use.

We disagree. True, the Winchester/Clark County zoning ordinance does not define "recycling." However, the ordinance could not have provided any definition of "recycling" that would have permitted Stuff to engage in conduct forbidden by statute. *See Ky. Rest. Ass'n v. Louisville/Jefferson Cnty. Metro Gov't*, 501 S.W.3d 425, 428 (Ky. 2016) (explaining an ordinance cannot conflict with a statute). Moreover, it is inarguable that "everyone is presumed to know the law; therefore, ignorance of the law is not an excuse." *Dep't of Revenue, Fin. and Admin. Cabinet v. Revelation Energy, LLC*, 544 S.W.3d 170, 176 (Ky. App. 2018). And, turning to what the operative law in this matter was, Stuff provides a clue in tab "5" of the appendix of its brief; namely, a citation it recently received for "improper screening of recycling establishments," stating in pertinent part:

> On or about 03/18/2019 the defendant, Stuff Recycling, owned by Jerry Joiner, was observed to be operating as a recycler as defined [in] KRS 177.905(4) while being required by KRS 177.910 and 177.915 to be 100% screened from public view from any roadway. The Recycling operations were visible from U.S. 60,

reliance upon the May 5, 2016 NOV issued by Joshua Cook, we add that the substance of Cook's NOV conformed to the applicable law, as discussed herein.

Clintonville Road and Verna Hills Drive in violation of such statutes with the penalty therefore being provided at KRS 177.990(3).

As this March 18, 2019 citation indicates, Stuff operates as a *recycler* (*i.e.*, "material recycler") within the meaning of KRS 177.905(4), which provides:

"Material recyclers" shall mean any establishment or place of business, including garbage dumps and sanitary fills, maintained, operated, or used for *storing*, keeping, buying or selling of old or scrap copper, brass, rope, rags, batteries, paper, trash, rubber debris, waste, or motor vehicle parts, iron, steel, and other old or scrap ferrous or nonferrous material.

(Emphasis added.)

In short, the "storing" of recycled material is part of the "establishment" or "place of business" of a "material recycler." *Id*.

In turn, because the "storing" of recycled material is part of a material recycler's "establishment" or "place of business," it qualifies – consistently with what the Board indicated to Stuff on February 13, 2012 – as an industrial use, not a B-4 business use. *See* KRS 177.912 (providing "[a]n automobile, vehicle or machinery recycling establishment or place of business or material recycling establishment or place of business . . . complies as a conforming use in an industrially zoned area[.]").

Likewise, as Stuff's citation also indicates, the "storing" of recycled material must, like the rest of a material recycler's "establishment" or "place of

-16-

business," either be located no "closer than 1,000 feet from the right-of-way line of any road[,]" or be "hidden from the view of motorists using such road by an artificial or natural screen, or is by virtue of natural topography so hidden." KRS 177.915. And, "[a]ny automobile, vehicle, machinery or material recycling establishment or place of business that cannot as a practical matter be screened, shall be required to be removed." *Id.*

The Clark County Zoning Ordinance, Article 4.2, as well as KRS 100.253(2), forbade Stuff from expanding its recycling operations from their original footprint located at 6169 Lexington Road to the adjoining Lot. Specifically, KRS 100.253(2) does not allow the enlargement or extension of a nonconforming use beyond the scope and area of its operation at the time of the regulation which makes its use nonconforming was adopted. Similarly, Article 4.2 states, "a nonconforming use shall not be extended beyond the scope and area of its operation at the time of the adoption of the regulation which makes such use nonconforming." "As a matter of policy and consistent with the spirit of zoning laws, nonconforming uses are to be gradually eliminated and are to be held strictly within their boundaries. An existing use cannot be enlarged nor extended and no substantially different use is permitted." *Legrand v. Ewbank*, 284 S.W.3d 142, 145 (Ky. App. 2008) (quoting *Attorney General v. Johnson*, 355 S.W.2d 305 (Ky. 1962)).

Recall, Stuff described its use of its land in *front* of the Property's buildings (land that includes the Lot) as "storage of recycled material, both in buildings, in trailers, and containers; parking of trucks and trailers used to haul scrap metal and materials; and parking of equipment." As discussed, *storing* recycled material is a function associated with the establishment or place of business of a material recycler – an industrial use, not a general business (B-4) use. Accordingly, Stuff's use of the Lot and the land on the Property in front of the buildings for that purpose unequivocally demonstrates that it has expanded its nonconforming "recycling" use beyond its legal scope (*i.e.*, beyond the fronts of the buildings located on the Property).

As for Stuff's *additional* use of that land for "parking of trucks and trailers used to haul scrap metal and materials; and parking of equipment," Stuff suggests this use could be taken in a vacuum as a "truck terminal," a "freight yard," or perhaps an "establishment and lot for the display, rental, sale and repair of farm equipment, contractors' equipment and trucks" – all of which are permissible uses of property located in a B-4 zone under the ordinance. While we are hypothecating, however, Stuff's additional use of that land for "parking of trucks and trailers used to haul scrap metal and materials; and parking of equipment" could, taken in a vacuum, just as easily and perhaps more readily

-18-

qualify as a "contractor's equipment storage yard" – which, like recycling, qualifies under the ordinance as a heavy industrial (I-2) use.

In any event, we agree with the Board that Stuff's use of its land in front of the Property's buildings for "parking of trucks and trailers used to haul scrap metal and materials; and parking of equipment" cannot be taken in a vacuum; and, that it should instead be viewed as either part of Stuff's principal "use" of recycling on that land, or as an "accessory" thereto, and therefore as part of Stuff's overall "operation" for purposes of KRS 100.253(2). Under Clark County Zoning Ordinance, Article 12, the word "use" as defined "broadly refers to the activities which take place on any land or premises and also refers to the structures located thereon and designed for those activities." "Accessory Structure or Use" is defined as "[a]ny structure or use . . . other than the principal structure or use, directly incident to or required for the enjoyment of the permitted use of any premises[.]" Here, it takes little imagination to see that the "parking of trucks and trailers used to haul scrap metal and materials," and the "parking of equipment" used to operate a material recycling establishment, are either regular activities that occur in conjunction with the use of material recycling, or are directly incident to or required for the enjoyment of that use.

In sum, Stuff was permitted to operate its nonconforming use (*i.e.*, its material recycling place of business or establishment) in a designated area: Inside

or behind the buildings located on the Property. Stuff then chose to operate its nonconforming use beyond that area, in front of the buildings located on the Property and on a separate lot. The Board is charged with disallowing "the enlargement or extension of a nonconforming use beyond the scope and area of its operation at the time the regulation which makes its use nonconforming was adopted," per KRS 100.253(2), and acted well within its authority by directing Stuff to discontinue the expansion of its recycling operation. Consequently, the Board did not err or otherwise abuse its discretion.

## IV. CONCLUSION

In the conclusion of its separate reviewing opinion, the Clark Circuit Court qualified its resolution of this matter as follows:

> Nothing in this Opinion shall be construed as prohibiting or restricting Stuff from engaging in other operations permitted in B-4 General Business District under Section 6.14 of the Winchester/Clark County Zoning Ordinances; provided, such operations do not expand or enlarge the nonconforming use of the scrap and recycling business.

We adopt this qualification and therefore AFFIRM the circuit court in all respects.

LAMBERT, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Grahmn N. Morgan
Clifford H. Ashburner
K. Cassandra Carter
Lexington, Kentucky

BRIEF FOR APPELLEE,
WINCHESTER/CLARK COUNTY
BOARD OF ADJUSTMENTS:

William A. Dykeman
Winchester, Kentucky

BRIEF FOR APPELLEE, TRESA
BRIDGES:

Tom FitzGerald
Frankfort, Kentucky